**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JERRY GORDON, JOSEPH GORDON, DENNIS GORDON, JOHN GORDON, and AARON GORDON,**

*Plaintiffs/Counter-Defendants,*

v.

**JACQUES L. GORDON,**

*Defendant/Counter-Claimant.*

CAUSE NO. 3:25-CV-688-CWR-ASH

**ORDER**

Plaintiffs/Counter-Defendants filed a motion for summary judgment, attaching as an exhibit an indictment of Defendant, issued by a Lauderdale County grand jury. Defendant/Counter-Claimant, Jacques Gordon, filed a motion to strike the indictment and Plaintiffs' reliance on the same in their motion. Defendant's motion to strike, Docket No. 78, is denied, and Plaintiffs' motion for summary judgment, Docket No. 69, is granted.

## I. Background

The parties to this action are siblings. The Hatfields and McCoys have nothing on the Gordons. This case arises from a dispute over ownership and access to 16 acres of family land in Lauderdale County, Mississippi.[1] Jerry, Joseph, Dennis, John, and Aaron brought this action against their brother Jacques to settle an alleged agreement surrounding the property.[2]

---

[1] Lauderdale County Chancery Court might be the expected venue to hear this family land dispute. Because these brothers live in separate states, they have properly invoked this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). To their credit, some siblings have refused to be a part of this spectacle. They likely understand that their mother would not be pleased with what has transpired here.

[2] As the parties to this case share the same last name, the Court refers to them by their first names to avoid confusion.

The Court briefly summarizes only those facts necessary to the resolution of the present motions.

In May 2025, a confrontation between Jacques and his brothers occurred on or near the family property. During the confrontation, Jacques destroyed some pieces of Plaintiffs' property, including trees, shrubs, and/or crops planted and cultivated by Jerry. Plaintiffs pursued charges against Jacques for the destruction of their property, and a Lauderdale County grand jury issued an indictment against Jacques in connection with the incident. Jacques filed a counter-claim, alleging that Plaintiffs pursued those charges for the purpose of interfering with Jacques's dental/oral-surgery practice, costing him thousands of dollars.

## II. Discussion

Because Defendant's Motion to Strike bears on the competency of the record evidence, the Court begins with that motion. Then the Court addresses Plaintiffs' Motion for Summary Judgment.

### A. Defendant's Motion to Strike

Jacques moved to strike Exhibit 1 to Plaintiffs' motion for summary judgment—a Lauderdale County indictment, dated March 26, 2026, charging Jacques Gordon with three counts of felony malicious mischief—and the portions of Plaintiffs' motion for summary judgment that rely on that Exhibit. Jacques requested these exclusions under Rule 37, for Plaintiffs' failure to timely disclose the indictment, and Rule 56, for Plaintiffs' impermissible use of inadmissible evidence.

1. <u>Rule 37</u>

Jacques first asserts that the indictment should be excluded because Plaintiffs produced it after the discovery deadline. "Under Federal Rule of Civil Procedure

26(a)(1)(A)(ii), a party must provide to other parties 'a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.'" *Julius v. Luxury Inn & Suites, LLC*, 535 F. Supp. 3d 600, 606 (S.D. Miss. 2021) (quoting Fed. R. Civ. P. 26(a)(1)(A)(ii)). Rule 26(e) requires, *inter alia*, a party to timely supplement its responses to requests for production, when that party becomes aware that their responses are incomplete. Disclosures and supplementations under these rules must be accomplished by the discovery deadline, which in this case was May 5, 2026. L.U. Civ. R. 26(b)(1) ("The discovery deadline is that date by which all responses to written discovery, including supplementation of responses, required by the Federal Rules of Civil Procedure must be made[.]"); *Julius*, 535 F. Supp. 3d at 606. Plaintiffs did not produce the indictment to Defendant until May 12, 2026, one week after the close of discovery.

Rule 37 states, if a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "To decide if a failure to disclose is 'substantially justified or harmless,'" courts in this circuit "weigh four factors: '(1) the explanation for the failure; (2) the importance of the [evidence]; (3) potential prejudice; and (4) the availability of a continuance.'" *Indian Harbor Ins. Co. v. Covington Flooring Co., Inc.*, No. 24-30243, 2025 WL 416992, at *3 (5th Cir. Feb. 6, 2025) (cleaned up) (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016)); *see also Texas A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

The first factor, Plaintiffs' explanation for their failure to comply with the discovery deadline, weighs against exclusion under Rule 37. Jacques was indicted on March 26, 2026. Joseph Gordon, one of the Plaintiffs, learned of the indictment on May 6, 2026, the day after the close of discovery and approximately six weeks after the indictment issued. Docket No. 88-1. Joseph explained in a sworn declaration that neither he nor any of the other Plaintiffs, who are his siblings, were aware of the indictment prior to that date. *Id.* Upon learning of the indictment, he notified his counsel, who obtained a verified copy of the indictment on May 7, 2026. *Id.*; Docket No. 69-1 (bearing certification from circuit clerk dated May 7, 2026). Plaintiffs produced the indictment on May 12, 2026. Plaintiffs' explanation for their failure to comply with the discovery deadline counsels against exclusion.

As to the second factor, the Court finds that the indictment of Jacques is important to the resolution of his counterclaim for tortious interference. Jacques claims that Plaintiffs "intentionally and willfully caused felony charges to be wrongfully brought" against him. Docket No. 35 at 12-13. An element of tortious interference—as discussed in more detail *infra*—requires that the offending acts be done "without right or justifiable cause . . . (which constitutes malice)[.]" *McBride Consulting Serv., LLC v. Waste Mgmt. of Miss., Inc.*, 949 So. 2d 52, 56 (Miss. Ct. App. 2006) (parenthesis in original). The indictment could support that Plaintiffs acted with legal cause, *i.e.*, right or justifiable cause, in pursuing charges against Jacques. *See Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998) (explaining, in the context of tortious interference, that a party lacks justifiable cause when they carry out "a wrongful act without legal or social justification"). Although the indictment may not be used to show that Jacques actually committed the acts he has been charged with, the fact that an indictment issued may support the proposition that there existed reason for Plaintiffs to

pursue charges in the first instance. *See, e.g.*, *Stevenson v. State*, 244 So. 2d 30, 33 (Miss. 1971) ("An indictment by a grand jury is a determination that probable cause does exist to hold the person indicted for trial."). The second factor weighs against exclusion.

On the third factor, the potential for prejudice is low. Jacques is the subject of the indictment and is a party to the criminal proceeding, so he cannot have been surprised by the disclosure of the indictment. He claims to be prejudiced by his inability to examine witnesses about the indictment; however, as explained, he was aware of this indictment prior to the close of discovery. It is unclear to the Court why Jacques would need Plaintiffs to produce a copy of his own indictment for him to conduct the questioning he intended. This factor too weighs against exclusion.

Finally, to the extent Jacques was indeed prejudiced by not being able to question witnesses about the indictment, he could have sought a continuance to allow him to conduct this examination. He did not do so. The Court finds this factor neutral.

Ultimately, the Court finds the late supplementation substantially justified and harmless.

2. Rule 56

Defendant also offers as grounds for exclusion the inadmissibility of the indictment as an evidentiary matter. Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Court is not persuaded that the indictment cannot be presented in a form that would be admissible in evidence at trial, as required for exclusion by Rule 56(c)(2).

Defendant objects to the indictment as hearsay and unfairly prejudicial. As to the former, while the indictment is an out of court statement, it is not being offered to prove the truth of the matter asserted. In other words, it is not being offered to prove that Jacques committed the crimes with which he is charged in the indictment. Instead, it is offered to show that a grand jury found that probable cause existed to proceed with charges against Jacques. As for Jacques's other objection, the Court is sensitive to the prejudice that introducing an indictment into evidence could cause. That said, two factors temper the Court's concern at present. First, at this stage, the Court rather than a jury considers the evidence. The danger of prejudice is far less, if not altogether absent, when the Court acts as factfinder. *See, e.g.*, *In re Tex. Petroleum Inv. Co.*, No. 24-2344, 2026 WL 1179142, at *5 (E.D. La. Apr. 30, 2026) (overruling 403 objection because there was "no danger of prejudice in this bench trial"); *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly . . . the same judge can also exclude those improper inferences from his mind in reaching a decision."). Second, Jacques, by claiming that Plaintiffs pursued these charges without justification, has made the propriety of bringing these charges in the first instance central to his counterclaim and, therefore, bolstered the probative value of the indictment. Defendant's objections are overruled.

### B. Plaintiffs' Motion for Summary Judgment

Jacques filed a counterclaim, stating two counts against Plaintiffs: (1) trespass and (2) tortious interference with a business relationship. Docket No. 34 at 12-13. Plaintiffs moved

for summary judgment with respect to Jacques's claim of tortious interference. Plaintiffs' motion is granted.

1. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

2. Discussion

Jacques claims that Plaintiffs pursued charges against him for malicious destruction of their property in Lauderdale County for the purpose of causing damage to Jacques's dental practice in Atlanta. Plaintiffs counter that they had reasonable grounds to pursue these claims against Jacques, namely, his threats and following conduct. Plaintiffs also argue that there is no evidence that their pursuit of charges was calculated to harm Jacques's business. Jacques

has failed to identify evidence that could demonstrate that Plaintiffs lacked a legal and/or social justification for pursuing these charges against him. That failure is fatal to his claim for tortious interference.

"Tortious interference with business relations . . . occurs when one unlawfully diverts prospective customers away from another's business." *McBride Consulting Serv.*, 949 So. 2d at 55 (citing *Par Indus.*, 708 So. 2d at 48). To state this type of tortious interference cause of action, the claimant "must prove (1) the offending acts were intentional and willful, (2) the acts were calculated to cause damage to the plaintiffs in their lawful business, (3) the acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) actual damage and loss resulted." *Id.* at 55-56; *see also MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (listing same four elements as "necessary to prove a claim of tortious interference with a business relationship"). These "four elements of interference with a business relationship must be proven by a preponderance of the evidence." *MBF Corp.*, 663 So. 2d at 598-99. "Additionally, in the case of tortious interference with business relations, in order to establish a prima facie case for damages, the [claimant] must prove (1) that his business experienced a loss, and (2) that the defendant was the cause of that loss." *McBride Consulting Serv.*, 949 So. 2d at 56 (citing *Par Indus.*, 708 So. 2d at 48).

The "offending act" in Jacques's tortious interference claim is Plaintiffs' pursuit of charges against Jacques for felony malicious mischief. The key question before the Court is whether Plaintiffs had any justification for taking that action. Plaintiffs argue that their pursuit of charges was justified by Jacques's threats to destroy Plaintiffs' property and the actions Jacques took to follow through with his threats. There is evidence in the record

showing that Jacques indeed made threats,[3] then followed through, destroying Plaintiffs' property.[4] The indictment further bolsters Plaintiffs' justification, as a grand jury ultimately found that probable cause existed to pursue criminal charges against Jacques for those actions. In response to Plaintiffs' motion, Jacques recounted the events that led to the family confrontation. While those events are complex and could certainly provide context and color to the conflict, they do not suggest that Plaintiffs lacked justification for pursuing charges against Jacques for felony malicious mischief. Jacques has failed to identify any record evidence that could prove the necessary third element of his claim for tortious interference. *See Par Indus.*, 708 So. 2d at 48 ("[T]he requisite intent is inferred when the defendant knows of the existence of a contract [or business relationship] and does a wrongful act *without legal or social justification* that he is certain or substantially certain will result in interference with the contract [or business relationship]." (emphasis added)). It is Jacques's burden to demonstrate that the offending act lacked any legal or social justification. He cannot meet his burden. His claim for tortious interference is dismissed.

**Conclusion**

The Court has considered all arguments; those not addressed would not have altered the outcome. Based on the foregoing, Defendant's motion to strike, Docket No. 78, is denied,

---

[3] *See, e.g.*, Docket No. 69-2 at 37 ("Q. . . . [Y]ou say I'm bringing my axe with me and I'm going to cut down every mother fucking tree and plant you have over there . . . . [I]f any of those trees have fruit on them, pick it. All the turnip greens, collard greens and whatever else you've got planted out there, go pick all you want because when I come I'm cutting down every mother fucking thing . . . . That was your message, right? A. Yes, sir.").

[4] *See, e.g.*, Docket No. 69-2 at 41 ("Q. . . . Does that video reflect the personal property that you removed from the house -- your mother's house and placed in the ditch on the property? A. Yes.); *id.* at 43 (Q. . . . Is that you cutting the crops down? A. Yes. Q. And those are the crops planted by Jerry? A. Yes."); *id.* at 47 ("Q. . . . And you see it looks like virtually everything in the garden, in the foreground at least, has been destroyed, right? A. Yes.").

and Plaintiffs' motion for summary judgment, Docket No. 69, is granted. Defendant's counter-claim for tortious interference with business relations is dismissed.

**SO ORDERED**, this the 8th day of September 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE